**Leon STRANGE, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

No. A–15092.

Court of Criminal Appeals of Oklahoma.

Nov. 12, 1969.

Don Anderson, Public Defender, Oklahoma County, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, David L. Russell, Asst. Attys. Gen., for defendant in error.

## MEMORANDUM OPINION

NIX, Judge.

Plaintiff in error, Leon Strange, hereinafter referred to as the defendant, was charged by information in the District Court of Oklahoma County with the capital crimes of Murder, case number 34295; and, Attempted Robbery with Firearms, case number CRF–69–115. On January 22, 1969, the defendant pled guilty to both charges, waived any delay in imposition of sentence, and the trial judge sentenced him to serve 99 years in case number CRF–69–115 for Attempted Robbery with Firearms; and, *consecutively,* a Life sentence for the Murder charge, case number 34295. Defendant then filed a timely appeal in both cases in this Court alleging appellate consideration of evidence and punishment, and lack of premeditation. [At this point, this Court takes judicial notice that the defendant, Leon Strange, had previously been tried by a jury in case number 34295 for the charge of Murder, and on June 12, 1968, the jury returned a verdict of guilty and sentenced him to Death in the electric chair. On December 12, 1968, the trial judge, the Honorable Harold C. Theus, granted defendant a new trial for the sole and only reason that the untimely death of his court reporter, Archie McInnis, prevented the defendant from appealing his case as required by statute because a transcript of the trial could not be completed.]

This Court has before it the transcript of the proceedings of January 22, 1969, where-

in defendant entered his pleas of guilty, and will herein set forth the pertinent parts of said transcript:

"TRANSCRIPT OF PROCEEDINGS

On January 22, 1969, at the hour of ten o'clock a. m. this matter came on for trial before the Honorable Carmon C. Harris, District Judge, Division Six, Oklahoma County, Oklahoma.

The defendant appeared in person and by his attorney, Don Anderson, Public Defender.

The State of Oklahoma appeared by Curtis P. Harris, District Attorney, Oklahoma County, Oklahoma, and James R. McKinney, Assistant District Attorney, Oklahoma County, Oklahoma.

The following proceedings were had:

THE COURT: This case coming on for trial this January 22, 1969, pursuant to regular assignment on the trial docket; the defendant appearing in person and by his attorneys, Don Anderson, the duly appointed Public Defender, and Mr. Berry Albert, member of the Bar of Oklahoma, who represented the defendant at the preliminary hearing.

Before empanelment of the jury Mr. Anderson requested permission to confer with the defendant. Whereupon, the defendant and his attorneys, Don Anderson and Berry Albert, retired to the Judge's chambers for conference.

At the conclusion of the conference Mr. Anderson advised the Court that he desired to make a record outside of the hearing of the jury.

Whereupon, the Court and the Court Reporter and the Clerk entered the Judge's chambers and in the presence of the defendant, his attorneys, the District Attorney, Curtis P. Harris, the Court Reporter and the Court Clerk and Deputy Sheriff, the doors being closed between the Judge's chambers and the Courtroom the following proceedings were had: (whereupon a discussion was had, but no record of said proceedings were made.)

THEREAFTER, at the hour of 10:25 a. m. further proceedings were conducted in this case as follows:

THE COURT: Let the record show that Mr. Anderson, attorney for the defendant, advised the Court that the defendant desired to change his plea to this charge and an additional charge and enter a plea of guilty.

Whereupon, all parties who had been in conference in the Judge's chambers entered the court room, and the Court was formally called to order.

(In open court) THE COURT: Ladies and Gentlemen, I may not need your services in this case this morning. I am going to excuse you to return to the Jury assembly room. However, your names will not be sent to the Jury assembly room for a little while, and therefore you will not be called for another jury until I advise the Clerk. So you go back to the Jury assembly room with the understanding that you are still intact as a prospective jury panel, and with the next thirty minutes or so I'll advise the Clerk and he will advise you whether or not you are still on this panel, but consider yourselves on this panel until you are further notified.

(The Jury Panel retired from the courtroom.)

Thereafter, the following proceedings were conducted in open court:

THE COURT: The following proceedings were had in the courtroom, the defendant being present in person and represented by his attorney, Mr. Don Anderson, the duly appointed Public Defender; the State being represented by Curtis P. Harris, District Attorney:

The District Attorney announced to the Court that an additional charge against this defendant had been filed, being Case No. CRF–69–115, styled, the State of Oklahoma versus Leon Strange, charging the offense of Attempted Robbery with Firearms.

This case also comes on for proceedings in Case Number CRF–69–115, and the Court understands that the defendant has appear-

ed before a Special Judge of the District Court and that preliminary hearing has been waived; is that correct?

MR. ANDERSON: That is correct.

THE COURT: Do you have an announcement to make in that particular case?

MR. ANDERSON: This would come on before this Court for the second arraignment?

THE COURT: Yes, sir.

MR. ANDERSON: I gather that since I have been appointed previously to represent the defendant in another charge that was set on the trial docket this morning that I would be appointed by the Court to represent him here on this charge.

THE COURT: That's correct.

MR. ANDERSON: Judge Kessler made that appointment down below.

THE COURT: Very well. And you will be reappointed in this court to represent the defendant in this case.

MR. ANDERSON: Leon, have you had a chance to read this information?

THE DEFENDANT: The Judge read it.

MR. ANDERSON: The Judge read it to you down in the other court?

THE DEFENDANT: Yes.

MR. ANDERSON: Your true name is Leon Strange as shown here?

THE DEFENDANT: Yes, sir.

MR. ANDERSON: And your age is—

THE DEFENDANT: Twenty-three.

MR. ANDERSON: We will waive the reading of the Information in this case in this court and enter a plea of guilty to the charge.

THE COURT: Let's take up Case No. 34,295. Do you have an announcement to make in that case?

MR. ANDERSON: Yes, sir; it is the defendant's desire to withdraw his former plea of not guilty in that numbered cause and to enter a plea of guilty.

INTERROGATION OF THE DEFENDANT BY THE COURT:

Q. Leon Strange, you have heard Mr. Anderson, your lawyer, state that you desired to enter a plea of guilty in Case No. CRF–69–115, that being the charge of Attempted robbery with firearms; and that you desire to withdraw your plea of not guilty in case Number 34,295, that being the charge of murder, and to enter a plea of guilty to that charge; is that correct?

A. Yes.

Q. You have discussed these cases with Mr. Anderson; he has been representing you for some time, has he?

A. Yes.

Q. You have previously been tried in Case No. 34,295, and Mr. Anderson represented you in that case?

A. Yes, sir.

Q. This morning you had a conference with Mr. Anderson who represents you at this time, and with Mr. Berry Albert, the lawyer who represented you in the preliminary hearing in Case No. 34,295. That conference took place in the Judge's chambers, only you and your two lawyers being present; is that correct?

A. Yes, sir.

Q. At that time did you discuss the entering of a plea of guilty to the murder charge?

A. Yes.

Q. Now then in the case No. CRF–69–115 it is charged that on February 25, 1968, you, the defendant, committed the crime of attempted robbery with firearms in that you attempted to rob one Robert Harmes Smith with a .22 caliber revolver; is that correct? Did you do that?

A. Yes.

Q. You are not only pleading guilty to the crime but you are also stating to the Court that you did the things charged, that you attempted to rob him; did you?

A. Yes.

THE COURT: What is the maximum penalty in that case, Mr. District Attorney?

MR. HARRIS: Well, Your Honor, life, any term of years, or even the electric chair. Attempted armed robbery draws the same thing as robbery, attempted armed robbery does.

THE COURT: You understand the Court could impose the death penalty for your entering a plea of guilty in that case, do you?

A. Yes.

Q. And with that understanding you want to enter a plea of guilty?

A. Yes.

Q. In case No. 34,295, it is charged that on February 25, 1968 you, Leon Strange, along with Dale Wayne Thompson and Calvin Ivan Epperson, committed the crime of murder in that you shot and killed Robert Harmes Smith; is that correct?

A. Yes.

Q. You plead guilty to that charge?

A. Yes, I do.

Q. In addition to pleading guilty to the crime you are telling the Court that you did the things charged against you?

A. Yes.

Q. You did shoot and kill Robert Harmes Smith?

A. Yes.

THE COURT: What is the maximum penalty in that case, Mr. District Attorney?

MR. HARRIS: It is either life imprisonment or death.

THE COURT: The Court has no alternative except to impose one of those sentences, either imprisonment for life or sentence him to death in the electric chair; is that correct?

MR. HARRIS: That's right, Your Honor.

Q. (By the Court) All right, knowing that, I say to the defendant, do you still want to enter your plea of guilty?

A. Yes.

Q. Knowing that the Court could impose a sentence of death if the Court felt that this crime warranted it?

A. Yes.

Q. How much education do you have?

A. Eighth grade.

Q. What has been your occupation during your adult life?

A. Punch press operator.

Q. Punch press operator.

A. Yes.

Q. Do you have a family?

A. Yeah, a mother and father.

Q. Where do they live?

A. Indiana.

Q. They are not here now, are they?

A. No.

Q. Have they been to see you since you've been here?

A. Yes, they was here once and McAlester once.

Q. Now, before I accept your plea of guilty I'm going to require you to tell me about both of these case; and I think that in order for everybody to be comfortable I think that you can take the witness stand. I will not require you to be sworn, but I want to ask you about these cases and all the events leading up to them, and I want you to tell me in detail exactly what happened. Are you willing to do that?

A. Yes.

Q. I want you to start early on the day of February 25, 1968, and tell me how you started out that day."

Whereupon, defendant told the court that he had shot Robert Harmes Smith while attempting to rob the service station where he was working. The trial judge continued:

"THE COURT: All right. I want to ask him another question. You can come right back up here.

### INTERROGATION BY THE COURT:

Q. Now, the Court has heard your statement with respect to how this robbery took place, and the murder. Now, even though you have testified to that here today, you

are still entitled to have your case tried by a jury, and the Jury would fix the punishment if they found you guilty. Now by entering a plea of guilty and asking the Court to fix the punishment you waive trial by jury. You understand that, don't you; you've talked that over with Mr. Anderson?

A. Yes.

Q. I understand you want to waive it?

A. Yes.

Q. You are willing to take your chances with the Court as to what penalty the Court might impose?

A. Yes.

THE COURT: Mr. Harris, then, I'll hear any recommendation that you have to make.

MR. HARRIS: Your Honor, we would like to recommend that the defendant be given a life sentence in each of these cases.

THE COURT: Mr. Anderson, did you know that he was going to make that recommendation?

MR. ANDERSON: Yes, sir; from Mr. Harris' own statements to me and in the presence of the defendant Mr. Harris repeated his statements about his intentions concerning his recommendation.

THE COURT: All right, I say to the defendant: did you know that Mr. Harris was going to make that recommendation?

THE DEFENDANT: Yes.

THE COURT: Now when Mr. Anderson was conferring with you this morning and after that conference, I'll ask you if it's a fact that Mr. Anderson went to the door and asked the Court—that's the Judge of the Court—to come into the room where you and Mr. Anderson and Mr. Albert had had your conference, is that correct?

THE DEFENDANT: Yes.

THE COURT: And the Court did come in. And at that time Mr. Anderson stated that you desired to change your plea of not guilty and enter a plea of guilty to the murder charge and enter a plea of guilty to the robbery charge; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: That was in your presence?

THE DEFENDANT: Yes sir.

THE COURT: I will ask you if the Court stated to you at that time that the Court would not be bound by any recommendation the District Attorney might make, but the Court would consider it, and that the Court might impose some other sentence other than that that would be recommended by Mr. Harris; is that correct? Did I tell you that?

THE DEFENDANT: Yes, sir.

THE COURT: I told you that I wanted you to understand that before you entered a plea of guilty, did I not?

THE DEFENDANT: Yes.

THE COURT: All right, I want to ask you again, even though you have entered a plea of guilty and you have confessed these crimes, now you understand that Mr. Harris has recommended a life sentence in each case; you understand it; you heard him say that?

THE DEFENDANT: Yes.

THE COURT: But I want to say to you again that the Court is not bound by his recommendation at all, and the Court could impose a sentence of death or could impose any other sentence authorized by law; you understand that?

THE DEFENDANT: Yes.

THE COURT: And knowing that you still want to stand upon your pleas of guilty in each case?

THE DEFENDANT: Yes.

THE COURT: Mr. Anderson, is there anything you want to say?

MR. ANDERSON: No, sir; I couldn't add anything to what the court has already heard.

THE COURT: Is there any reason that sentence should not be imposed at this time? Do you have any reason? I ask the defendant that. Do you know of any reason why sentence shouldn't be imposed now?

MR. ANDERSON: Now, sir. And in view of the defendant's statement, we would formally waive any delay in the imposition of sentence.

THE COURT: Anything you want to say, Mr. Harris?

MR. HARRIS: No.

THE COURT: Very well. The Court has considered the defendant's plea of guilty to the charge of attempted robbery, and to the charge of murder, and has heard the defendant make a confession which the court finds to have been made knowingly, that he is in possession of all his faculties, that he understands his rights, that he has been adequately represented and advised by his attorney, Mr. Don Anderson, and the Court is of the opinion that it is sufficiently advised to impose a proper sentence in this case.

This is a most vicious crime, and it's one that ought to be punished adequately, not only for the purpose of punishing this defendant for the crimes that he has committed, but more importantly as a deterrent to others who might have some compulsion to commit similar or other crimes.

And the Court is going to do his best to impose such a sentence in this case. This is a case that would justify the death penalty, and the question has been many times asked jurors whether they believe in the death penalty, and those jurors have had some difficulty with that answer. It is difficult to know what is meant by whether or not one believes in the death penalty.

As an individual I feel that I do not believe in the death penalty, but that is only because my religion tells me that it is doubtful in my mind whether one man or one group of men has the right to take the life of another.

I fell, perhaps, that some other power is the only one that ought to have that right, and that authority. But the way I feel about it doesn't make any difference. It's not for me to determine what the law ought to be with respect to crimes of this kind. The people of the State of Oklahoma have determined that the death penalty is a suitable penalty and punishment of certain crimes, including murder, and other crimes; and as a Judge of this Court I would be derelict in my duty if I would allow my belief about the death penalty to deter me from imposing the death penalty in a proper case if I thought it should be done.

And since I was notified about two hours ago that the defendant was going to plead guilty I have considered imposing the death penalty in this case. But I want it understood now that in a proper case this Court will not hesitate to impose the death penalty, whether it be by verdict of the Jury or whether it be by plea of guilty; and I would like potential law violators to be so advised.

However, in this case the Court is not going to impose the death penalty for various reason, which we will not detail at this time; and therefore, it will be the judgment and sentence of the Court in Case Number CRF-69-115, that the defendant, Leon Strange, be sentenced to confinement in the State Penitentiary for a term of ninety-nine (99) years and that his sentence commence upon his delivery to the Warden of that institution.

And in Case No. 34,295, it is the judgment and sentence of the Court that the defendant be confined to the State Penitentiary for the balance of his natural life, and that sentence will commence upon the expiration of the sentence in Case No. CRF-69-115.

I want it to be understood that these sentences shall run consecutively. By imposing this sentence it's the intention of this Court for this man to serve in the State Penitentiary for the balance of his natural life, and the responsibility of his remaining there will pass from this Court to some other agency, and if any other agency is inclined at any time in the future to release this man from confinement for the convenience of the State of Oklahoma, or for any other similar reason, it is suggested that that agency will be derelict in its duty.

* * * All right, now I say to you, the defendant, you have a right to appeal from

this judgment and sentence to the Court of Criminal Appeals of the State of Oklahoma, and you are entitled to have an attorney represent you on appeal just as you had an attorney represent you in these proceedings if you are unable to provide for an attorney.

And you are entitled to have a casemade, that is, a record of these proceedings, prepared at public expense and furnished to you or your lawyer, so that you may make this appeal. Do you desire to—do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand your rights?

THE DEFENDANT: Yes.

THE COURT: You are further told that to appeal to the Court of Criminal Appeals of the State of Oklahoma from this judgment and sentence you must give notice of your intention to appeal, and you must request a casemade, both in writing, and file such notice with the Clerk of this Court within ten days from this date.

Do you wish to appeal from this judgment and sentence?

THE DEFENDANT: Yes.

THE COURT: Do you wish an attorney to be appointed to appeal this case for you to the Court of Criminal Appeals?

THE DEFENDANT: Yes.

THE COURT: Do you wish to be provided with a casemade at public expense?

THE DEFENDANT: Yes.

THE COURT: You have the right to remain in the County Jail for ten days during which time this notice of appeal will be made. Do you desire to do that?

THE DEFENDANT: Yes.

THE COURT: Do you fully understand all of the questions that I have asked you today?

THE DEFENDANT: Yes.

THE COURT: And you understand the import of your answer to each one of those questions?

THE DEFENDANT: Yes.

THE COURT: Very well; this case is recessed.

MR. ANDERSON: Let the record show the exception to the judgment and sentence of the Court on the part of the defendant. (Proceedings concluded.)"

This Court has held repeatedly, as in Embry v. State, Okl.Cr., 310 P.2d 617:

"Where an appeal is taken by an accused from a judgment entered upon a plea of guilty, the appeal will ordinarily present only such questions as go to the free and voluntary character of the plea, or that accused was not of competent intelligence, or was not advised of his legal rights and of the nature and consequences of his plea, or as to the sufficiency of the indictment or information to confer jurisdiction, or the legality of the sentence."

After a careful examination of the transcript as related above, this Court can find no error.

It is apparent the defendant knew exactly what he was doing; he stated he did not want a jury trial, and that he had done the things he was charged with. He was aware of the recommendation the District Attorney would make, and was further aware that the trial judge would not be bound by such recommendation.

We do not believe the sentence in either case to be excessive under the facts as related by defendant to the trial judge. We consider the defendant to have thought himself extremely fortunate to have been granted a new trial in the first murder case.

We are of the further opinion that defendant's third proposition is without merit.

It is the order of this Court, therefore, that the judgment and sentence in both cases be affirmed.

BRETT, P. J., and BUSSEY, J., concur.