Felton MANUEL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-76-407.

Court of Criminal Appeals of Oklahoma.

Feb. 23, 1977.

Terry L. Meltzer, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Frank Muret, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Presiding Judge:

The Appellant Felton Manuel, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Okmulgee County, Case No. CRF–72–98,[1] for the offense of Murder, in violation of 21 O.S.1971, § 701. In accordance with the verdict of the jury the defendant was sentenced to life imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Troy Chester Huddleston testified that on July 20, 1972, he operated a cafe at 407 East Fifth in Okmulgee, Oklahoma. He was sitting at a table behind the bar eating when he heard a noise. He turned around and observed the decedent, Arlantus Evans, also known as Bayman, fall to the floor. Defendant struck Bayman with a pool cue while he was lying on the floor. He took the pool cue away from the defendant and walked to the telephone to call the police. Defendant followed him and stated that "he shot me." [Tr. 13] Huddleston testified that he did not see a gun nor did he hear a gun fired in the cafe. He further testified that he did not hear any argument prior to the incident. He subsequently gave the pool cue to an elderly policeman.

Earl Barnett testified that he was in the cafe on the evening in question, shooting pool with the defendant. As he was preparing to shoot, he looked around and observed Bayman lying on the floor. Defendant was standing there with a pool cue in his hands. He observed defendant strike Bayman. He testified that he did not hear any argument prior thereto between defendant and Bayman. He walked out the door without finishing the pool game.

Lulu May Huddleston testified that on the evening of July 20, 1972, she was in the kitchen when she heard a "lick." She turned around and observed Bayman lying on the floor. Defendant had a pool stick in

1. See *Manuel v. State*, Okl.Cr., 541 P.2d 233 (1975), in which we reversed and remanded this case for a new trial.

his hand and started to hit Bayman. Her husband yelled at him and defendant lowered the stick. Her husband took the stick from defendant. She testified that she did not hear any argument or cursing prior to hearing the blow struck.

Officer James Hathaway testified that he answered a call at the Sunset Cafe prior to midnight on July 20, 1972. The defendant, Chester Huddleston and Lulu May Huddleston were present when he arrived. He observed a black male lying on the floor near the juke box. He returned to his police unit and radioed for an ambulance. Defendant was placed under arrest and advised of his Miranda rights. While en route to the police station, defendant stated, "this other party had shot him one time and threatened to shoot him again." [Tr. 81]

Officer Chester Hodge identified certain photographs of the scene. He further identified State's Exhibit No. 1 as a pool stick he received from Chester Huddleston. He subsequently delivered the pool stick to Captain Baker.

Officer Bob Morrow identified certain photographs he took at the cafe as accurate portrayals of the scene when he arrived.

The parties stipulated that the autopsy performed on the body of Dr. Fogel reflected that the cause of death was extensive cerebral injury due to cranial trauma.

Officer Fred Baker testified that he assisted in the investigation at the Sunset Cafe. He did not observe any weapons on or about the body of Arlantus Evans. He subsequently interrogated the defendant in the District Attorney's Office after first advising him of his Miranda rights. Defendant acknowledged understanding the rights and agreed to make a statement. The statement was recorded and also reduced to transcription. The tape recording was played to the jury and the transcription was admitted into evidence without objection.

The transcription, in essence, revealed that the defendant stated that some time prior to the incident, Evans had shot him in the shoulder. Evans made threats to several persons that the next time he shot Felton Manuel he would shoot him right between the eyes. Evans approached him while he was playing pool and again stated that he was going to shoot him. Evans put his hand in his pocket and Manuel, thinking that he had a gun, struck him with the cue stick. The defendant further stated that he hit him two or three times, once while he was on the floor.

The defendant did not testify at the trial, nor was any evidence offered in his behalf.

As his sole assignment of error, defendant asserts that the trial court committed reversible error in failing to submit written instructions to the jury concerning punishment and in failing to direct the jury to retire for the purpose of deliberating on the question of punishment.

The defendant was charged with the crime of "Murder, After Former Conviction of a Felony." Upon completion of the evidence, the jury received instructions as to the crime of Manslaughter in the First Degree and the crime of Murder. After deliberating the question of defendant's guilt, the jury returned a verdict of "guilty of Murder." At that time the transcript reflects that the following took place:

"THE COURT: Ladies and Gentlemen, you have heard the verdict that has been read to you in open court. Is that your verdict, so say each of you, Ladies and Gentlemen?

"JURORS: (Affirmative answers.)

"THE COURT: Is there anything further at this point?

"MR. WEBB: We have nothing.

"MR. PORTER: No.

"(WHEREUPON, AT THIS POINT, A SHORT DISCUSSION WAS HAD BETWEEN COURT AND COUNSEL AT THE BENCH OUTSIDE THE HEARING OF THE JURORS AND THE COURT REPORTER, AFTER WHICH THE FOLLOWING PROCEEDINGS WERE HAD, TO-WIT:)

"THE COURT: If it is all right, we will handle it that way.

"MR. PORTER: I have no objection.

"THE COURT: Ladies and Gentlemen of the Jury, in a case of this nature the reason you did not set the punishment because the case was tried on a matter which we refer to in the legal business as after former conviction of a felony. We are not allowed to let you set punishment until we go into the second phase of the trial. There is no need for the Court to send you back to consider the punishment because the statute under Title 21, Section 707, states that any person convicted of murder shall suffer imprisonment at hard labor in the state penitentiary for life. As Mr. Webb told you earlier, the law has been changed on the commission of this crime to a different murder statute and under this one it was death or imprisonment and the death matter was struck down by the Supreme Court. But at the time of the commission of this crime, the law of the State of Oklahoma was as modified by the Supreme Court, would be life imprisonment if you found the Defendant guilty of murder. Since by your verdict you have found him guilty of murder, there is only one verdict and that is life imprisonment and there is no need for you to go back to consider it, because there is nothing else for you to consider and I would ask the Foreman if he would then sign this verdict form which sets the imprisonment at life.

"JURY FOREMAN: Yes, sir.

"THE COURT: Mr. Webb and Mr. Porter, you have heard the comments the Court has made to the jury foreman concerning this punishment, are there any objections or anything further that needs to be raised?

"MR. WEBB: I think that correctly sets it forth.

"MR. PORTER: For the purpose of the record, Your Honor, we would ask the Court to show our objections.

"THE COURT: Now if you would like, Mr. Porter, you will have to direct me in this matter. I will be glad to instruct the jury on the punishment and ask them to retire to the jury room for the purpose of considering it, from that standpoint.

"MR. PORTER: No, Judge. I think the Foreman has already signed it in open Court.

"THE COURT: Ladies and Gentlemen of the Jury, you have heard the statement the Court made to the jury and the fact that the Foreman has now signed this verdict form which sets his punishment at life imprisonment. Understanding what the law is, would that be your judgment, Ladies and Gentlemen of the Jury?

"JURORS: (Affirmative answers.)" [Tr. 172–175]

It would appear from the record that the defendant waived his objection to the procedure used, then after the Foreman of the jury signed the verdict, the defendant entered his objection to the procedure in the record. Finally, upon being asked by the court if he agreed with the procedure, the defendant once again acknowledged the procedure. However, we feel, that even if for the sake of argument, it was agreed that the Court erred in not submitting the question of punishment to the jury, it would still appear to be nothing more than "harmless error." The trial court was absolutely correct in its statement to the jury that once they found the defendant guilty of Murder, under the then existing law, there was no other punishment possible other than that of life imprisonment. The defendant received, upon being found guilty on the merits, the one and only punishment provided under the law then and there existing at that time. We find, therefore, that even if the defendant did not affirmatively waive any objection he had to the submission of the question of punishment to the jury, that the defendant has failed to demonstrate how he was prejudiced by such a procedure, since the instant procedure definitely falls within the provisions of 20 O.S.1971, § 3001, the harmless error statute.

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly *AFFIRMED.*

BLISS and BRETT, JJ., concur.