**Larry Leon CHANEY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–699.**

Court of Criminal Appeals of Oklahoma.

May 15, 1980.

Rehearing Denied Sept. 12, 1980.

---

Allen M. Smallwood, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Mary Kathleen Rhodes, Asst. Atty. Gen., Jan Eric Cartwright, Atty. Gen., David W. Lee, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Larry Leon Chaney, hereinafter to be called the defendant, was convicted of Murder in the First Degree—21 O.S.Supp.1979, § 701.7—in the District Court, Tulsa County, in Case No. CRF–77–756. After a hearing on the aggravating and mitigating circumstances of the case, the jury voted to impose the death penalty.

The victim was Mrs. Kendal Inez Ashmore, an authority on Morgan horses. On March 17, 1977, Mrs. Ashmore and her assistant, Ms. Kathy Brown, went to meet a man neither of them knew, who had ex-

pressed an interest in Morgan horses. They were never seen alive again. On March 22, their bodies were found buried on the defendant's property in Sequoyah County, Oklahoma. Although the defendant was charged with both deaths, the murder of Mrs. Ashmore was tried first. The trial on the murder of Ms. Brown is still pending.

■ In his first and seventeenth assignments of error, the defendant complains that a prospective juror was excused for cause in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In *Witherspoon,* the Supreme Court held that persons cannot be excused from jury service for cause just because they are opposed to the death penalty. They can be excused for cause if their views are so strong that they would refuse to return a verdict of guilty, where it was justified, because the defendant could be sentenced to death. Prospective jurors can also be excused for cause if they have decided in advance that they will not vote to impose the death penalty, regardless of the circumstances. However, the questioning in this area during voir dire cannot be too specific:

". . . The most that can be demanded of a venireman . . . is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. . . ." (Emphasis original) *Witherspoon v. Illinois,* 391 U.S. 510, n. 21, 88 S.Ct. 1770, n. 21.

In the instant case, we believe that it was proper to excuse the juror. The defendant's attorney and the State's attorney questioned the woman; and both sides point to answers given by her, which they say support their respective arguments. But one of the tendencies of voir dire in a challenge situation is that the longer it lasts the less objective it becomes, as both parties attempt to phrase their questions in such a way as to elicit the desired answers. We are most impressed by the answers the prospective juror gave to the first questions asked by the trial court:

"THE COURT: I'll ask you the same question I asked the other jurors. In a case where the law and evidence warrant, in a proper case, could you without doing violence to your conscience agree to a verdict imposing the death penalty?

"MS. FETERLY: No, sir, I don't believe I could.

"THE COURT: If you found beyond a reasonable doubt that the defendant was guilty of murder in the first degree, and if under the evidence and circumstances it would permit you to consider a sentence of death, are your reservations of the death penalty, regardless of the law and facts and circumstances of the case, such that you could not inflict the death penalty?

"MS. FETERLY: No, sir, I don't think I could.

"THE COURT: Did you hear my question: Are your reservations about the death penalty such that regardless of the law and facts and circumstances of the case you would not inflict the death penalty?

"MS. FETERLY: Yes, sir. I understand. I could not."

The defendant also argues from *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), that the exclusion of this juror denied the defendant a jury which represented a cross-section of the community. But this argument is without foundation. *Taylor* involved the exclusion of all women from jury service, while in the present case only one prospective juror was excused on the *Witherspoon* issue, and we find that this was valid.

■ In his second assignment of error the defendant objects to the introduction into evidence of soil samples extracted from four locations on his property near Sallisaw, Oklahoma. But the defendant not only failed to object to the introduction of the evidence at the trial, he also failed to cite any authority to support his argument in this Court. Both of these lapses constitute failure to properly set the issue before the

Court. *Roberts v. State*, Okl.Cr., 568 P.2d 336 (1977), and *Robertson v. State*, Okl.Cr., 562 P.2d 880 (1977). We therefore do not reach the merits of this issue.

■ The fourth assignment of error is concerned with the trial court's denial of the defendant's motion for a change of venue. Such motions are directed to the trial court's sound discretion—*Andrews v. State*, Okl.Cr., 555 P.2d 1079 (1976)—and we do not find any abuse of that discretion in this case. The record makes clear that the judge was sensitive to the publicity problem: Although he denied the defendant's motion, he said that he would reconsider it if jury selection became difficult. But no juror expressed any preconceptions as to the defendant's guilt, and the defendant was given wide latitude during the voir dire. Compare *Hammons v. State*, Okl.Cr., 560 P.2d 1024 (1977).

■ The fifth assignment of error points to statements made by the prosecutors during closing argument—statements which the defendant says were intended to be emotional arguments instead of comments on the evidence. While the remarks were unnecessary, they were not so grossly improper as to affect the jury's verdict. The evidence herein, even though circumstantial, was conclusive. See *Beeks v. State*, Okl.Cr., 563 P.2d 653 (1977).

■ We see no merit to the defendant's contention that the prosecuting attorney commented on the defendant's failure to take the stand. The judge instructed the jury that it should consider whether the aggravating circumstances in the case, if any, were offset by any mitigating circumstances, and he gave them a list of mitigating circumstances as examples. One of these was the age of the defendant. During closing argument, the prosecutor said he had heard no evidence of the defendant's age, and this is the comment which the defendant challenges. This is not a comment on the defendant's failure to testify because there are many ways to prove one's age besides personal testimony.

■ The sixth assignment of error is an umbrella-type argument challenging the introduction of several pieces of evidence. The first item is the introduction of photographs of the defendant's Chevrolet Corvette. However, the fact that a Corvette similar to the defendant's was seen in the area of the ransom money drop site could circumstantially imply that the defendant's Corvette was the vehicle observed. Because the defendant was charged with felony-murder as well as with malice aforethought murder, this evidence was relevant to connect the defendant to the kidnapping.

■ The next item under this assignment is the introduction of two groups of photographs of the grave scene—State's Exhibits 44 through 61, and 104 and 105. The defendant also challenges State's Exhibit No. 71, a slide of the calf and ankle of Kendal Ashmore's leg taken during the autopsy. We have viewed the photographs in question and their introduction was not counter to our holding in *Oxendine v. State*, Okl.Cr., 335 P.2d 940 (1958). In *Oxendine* we imposed a balancing test on the introduction of photographs, which because of their subject matter, carry a danger of prejudice. Such evidence is inadmissible unless the possibility of prejudice is outweighed by the probative value. This is, of course, nothing more than the common judicial determination of relevancy. McCormick, Evidence, 438–441 (2nd Ed. 1972). And see 12 O.S. Supp.1979, § 2403.

■ With the exception of State's Exhibit No. 71, all of the photographs before us were taken during the exhumation of the bodies of Mrs. Ashmore and Ms. Brown, beginning with the pile of brush covering the gravesite and ending with the photograph of Mrs. Ashmore. These photographs allowed the jury to see the manner in which the victims had been bound and the way in which they were killed, as well as the attempt that had been made to conceal the grave. The pictures are not offensive, and their admission was proper. (Exhibits 104 and 105 were photographs of Ms. Brown's body, which makes them pertinent to the ninth assignment of error; but

as far as this sixth assignment of error is concerned the exhibits were not objectionable.)

■ The admission of State's Exhibit No. 71 was also proper. A fact in contention was the time of Mrs. Ashmore's death in relation to the time of the kidnapping, and the defendant, hoping to disprove the State Medical Examiner's estimation of the time of death, put in issue the length of the hair on Mrs. Ashmore's legs. The State then introduced its photograph of Mrs. Ashmore's calf and ankle so that the jury could decide the issue for itself. Because the defendant invited the introduction of this exhibit by placing the matter in issue and because the picture is not gruesome, the trial court did not abuse its discretion in allowing the slide to be shown to the jury.

■ State's Exhibits 1 and 3, tape recordings of the ransom demand telephone calls made to Mr. Ashmore, were admitted into evidence and played for the jury. The defendant challenges their introduction; but as we held in *Pearson v. State*, Okl.Cr., 556 P.2d 1025 (1976), a person may legitimately consent to the recording of conversations to which he is a party, and Mr. Ashmore consented to the taping of the telephone calls. As with photographs, a determination of relevancy must be made, weighing the probative value of the recordings against the possibility of prejudice. And, in the instant case, the balance for the tapes, as with the photographs, was in favor of admissibility. The trial judge did not abuse his discretion by allowing the introduction of this evidence.

■ Finally, under the sixth assignment of error, the defendant complains of the admission of State's Exhibit No. 62, a videotape. The trial court agreed with the State's argument that it would be impractical to take the jury to Sallisaw to view the gravesite and allowed the State to present a 15–20 minute videotape of the road leading to the defendant's property and the drive through that property to the gravesite. The defendant calls the tape an attempt to reenact the crime and asserts that it biased the jury.

Visits by a jury to the scene of the crime are permitted by 22 O.S.1971, § 851. In evaluating the substitution of a videotape for such a visit, we again consider the factors affecting relevancy. The tape had little probative value, since it only showed the jury the character of the defendant's property. But in that respect, the tape was merely cumulative, since several witnesses described the property. The videotape could not have been used by the State to show how the murderer had tried to hide the bodies because the concealing pile of brush had been removed and the bodies exhumed. What the jury saw on the tape was a hole in the ground. (Also, in addition to the videotape, the State introduced an exhaustive series of slides taken during the exhumation, and several of these showed the site before it was disrupted.) The videotape could not have been used by the State to show whether or not the site was visible from the road because it was filmed more than a month after the murders; it was then somewhat later in the spring and the foliage was not the same as it had been at the time of the crime.

The defendant asserts that the State was attempting "to put the jury in the actual vehicle, by using a little imagination, and to take that fateful ride, along with the victims, from Highway 59 to the gravesite on the defendant's property." The evidentiary value of the tape was minimal, but it was not highly prejudicial. If anything, it was a waste of the jury's time to view the videotape.

■ In his seventh assignment, the defendant objects to the visit by the jury to the Jenks rodeo grounds, where the ransom money was to be delivered. As stated above, such visits are authorized by law; and for that reason we will not overturn the trial court's decision.

Next, the defendant challenges the admission of evidence seized during a warrantless search of his residence made contemporaneously with his arrest. Title 22 O.S.1971, § 196, permits an arrest without a warrant by an officer when a felony has

been committed and the officer has reasonable cause to believe that the person arrested committed the felony. That there was reasonable cause to arrest the defendant is apparent from a consideration of the circumstances: On the evening of Mrs. Ashmore's disappearance a man called Mr. Ashmore and told him that it would cost him $500,000.00 to ransom his wife. Mr. Ashmore contacted the FBI, and agents made arrangements to trace any further calls. The next evening the kidnapper made a second call, outlining instructions for payment of the ransom. That call was traced to the defendant's residence.

Law enforcement officers did not go there immediately. Instead, Mr. Ashmore attempted to comply with the ransom demands, presumably hoping to recover his wife alive. But later that evening there was a third call, accusing Mr. Ashmore of failing to follow instructions and threatening to kill Mrs. Ashmore. This call was traced to a public telephone booth and the defendant's palm print was found on the telephone. It was at this point that the raid on the defendant's home was organized.

▮ The defendant maintains that the law enforcement officers had sufficient time between the time of the last call and the time of the arrest to obtain arrest and search warrants. But an emergency effort to save the victims' lives was of paramount importance. Under the circumstances, the officers acted correctly in organizing and carrying out the arrest as quickly as possible, but in a way which would minimize the likelihood of harm if the victims were being held hostage in the defendant's home.

The defendant was arrested at approximately 3:30 a. m. on March 18 and informed of his constitutional rights. At this time the officers searched the premises; and in the kitchen trash they found a scrap of paper with the words, "1:00 P.M. Thursday Richard Elliott." This is the name of the man whom Mrs. Ashmore and Ms. Brown were to meet. The meeting had been set for 1:00 p. m. Because the search included areas beyond the defendant's control, he contends it was conducted in violation of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and was per se unreasonable.

▮ The defendant is correct in his assertion that every warrantless search is per se unreasonable. *Hughes v. State*, Okl. Cr., 552 P.2d 1154 (1976). However, there are exceptions to this rule, exceptions based on necessity. If the time required to secure a warrant could result in the loss of evidence, the escape of a suspect, or above all the death of a victim, then law enforcement officials may act without a warrant if probable cause exists. As this Court said in *Hughes v. State*, supra, the existence of an emergency permits the law enforcement officer to substitute his judgment for that of a neutral and detached magistrate as to the existence of probable cause.

▮ From the content of the third and last call, the police could justifiably believe that the kidnap victims were still alive, but that their deaths were imminent. Time was of the essence. We hold that the officers were justified in conducting a warrantless search for either the victims or evidence of their location. This assignment of error is without merit.

▮ At the trial, the defendant attempted to prove that the words on the scrap of paper were not in his handwriting. He introduced into evidence defendant's exhibit 37, an admittedly genuine sample of his handwriting, and called a handwriting analyst to testify that the defendant had not written the note. On rebuttal, the State introduced State's Exhibits 86 through 93, which it claimed were genuine samples of the defendant's handwriting, and called a handwriting analyst of its own. In his third assignment of error, the defendant correctly asserts that the State failed to authenticate its exhibits. However, this failure does not entitle the defendant to relief because the State's expert also examined defendant's exhibit 37 before testifying. Thus, even if the State's exhibits had been barred, its expert still could have testified.

The defendant complains, in his tenth assignment of error, of the introduction of State's Exhibits 13 through 17, the clothing Mrs. Ashmore was wearing when she was last seen, and in which she was found in the shallow grave on the defendant's property near Sallisaw, Oklahoma. At the trial, the defendant offered to stipulate to these exhibits as well as to the State's arguments in support of their admission into evidence. The defendant argues that the exhibits did not in any way aid the jury in determining any factual issues or questions.

■ He complains that the jury should have been admonished to utilize the clothing only to determine the identity of the victim and not to construe these exhibits as circumstantial evidence indicating the time of death, but he does not say why. As mentioned previously, the time of death was an important issue in both the State's and the defendant's theories of the case. The State argues that the creases in the victim's jeans were a circumstantial indication that her death occurred shortly after her abduction; otherwise, the jeans would have been wrinkled. Concerning the admissibility of clothing worn by a deceased, we have held that its introduction is appropriate if it tends to solve a factual issue, illustrate a material point or shed light on a matter from which a solution to the case may be drawn, as well as to identify the victim and connect the accused with the crime. *Martin v. State*, 67 Okl.Cr. 390, 94 P.2d 270 (1939); *Brewer v. State*, Okl.Cr., 414 P.2d 559 (1966); *Noah v. State*, Okl.Cr., 562 P.2d 950 (1977). We hold that admitting these exhibits into evidence in the instant case was proper and the jury could utilize them for whatever they were worth in resolving the material factual issues.

In his next assignment of error, the defendant contends that it was improper for the trial court to allow the admission of the pieces of toweling used to bind and strangle the victims. He claims that the items were not sufficiently identified. By the testimony of various witnesses, the State established that the towel strips introduced were still on the bodies when they were discovered, thus laying a proper foundation for their introduction. However, it is clear from his brief that the defendant's assignment is actually aimed in another direction.

■ The night before the kidnapping the defendant stayed in a motel in the Sallisaw area. The operators of the motel testified that the defendant left at 6:30 a. m., and when they checked the room at 9:30 a. m. several towels were missing. According to these witnesses, the towels used to bind the victims closely resembled the towels missing from the defendant's room. The defendant points to the fact that the motel operators could not positively identify the bindings as the missing towels and argues that their testimony should not have been allowed. But an absolute identification is not required. The nature of circumstantial evidence is such that an absolute connection cannot be made, yet it is admitted for whatever value the trier of fact attaches to it. "The lack of positive identification in such a case affects the weight of the article or substance as evidence, rather than its admissibility." *Richmond v. State*, Okl.Cr., 456 P.2d 897 (1969), Syllabus No. 5. This assignment of error is without merit.

The twelfth assignment of error pertains to the trial court's refusal to allow one of the defendant's witnesses to testify. At an in camera hearing, the witness testified that he was in the county jail before the kidnapping occurred and that an inmate, whom he did not know and could not name, told him the Mafia had planned a kidnapping which would occur soon in Jenks, Oklahoma. The inmate said that his brother was implicated in the crime. The witness did not know the defendant until they met in jail a few days before the defendant's trial; and when he discovered what the defendant was accused of doing he told the defendant what he had heard.

■ After the in camera hearing, the trial judge ruled that the testimony was inadmissible hearsay. The defendant argues that the testimony fits within the "declaration against interest" exception, as that exception has been extended to include penal interests. *Howard v. Jessup*, Okl.,

519 P.2d 913 (1973). But for a statement to be admissible as a statement against penal interest, it must be against the interest of the declarant. Here, the statement implicated the declarant's brother, not the declarant, and no circumstances were shown to indicate implication of the declarant as well. This assignment of error is also without merit.

 A search of the courtroom for weapons coincided inadvertently with the jury's return to the box to begin the second stage of the proceedings. In his thirteenth assignment, the defendant complains that the jury's observation of this search justified declaring a mistrial and that the failure to grant such a motion was error. While we do not condone a search for weapons conducted in the presence of the jury, in light of the particular circumstances of the case we do not see that the panel was thereby prejudiced. The judge ordered the search because one juror had seen a gun in the purse of a spectator and had expressed apprehension to the court reporter. Assuming that the jurors were fearful for their safety, it does not follow that their cognizance of the search would result in substantial prejudice to the defendant; and the defendant makes no showing that such prejudice existed. We therefore affirm the trial court's denial of the defendant's motion for a mistrial.

The fourteenth assignment of error is an attack on Oklahoma's death penalty statute and is divided into three subdivisions. The first argument is a philosophical one which should more properly be addressed to the Legislature in an attempt to have the death penalty repealed. The second argument is a preposterous assertion that it would be illegal for a state official to use a controlled, dangerous drug in executing the punishment.

The third argument under this assignment is a shotgun-type argument in which the defendant attempts to make several points against the second stage of the bifurcated proceedings. The general tenor of the argument is that the Legislature has failed to insure that the death penalty will not be imposed in an arbitrary and discriminatory way. He says that the use of a presentence investigation is improperly prohibited by 21 O.S.Supp.1979, § 701.10 and 22 O.S.Supp.1979, § 982; but the fact is that the trial judge is expressly prohibited from suspending a sentence of death by 22 O.S. 1971, § 1004. Since the only purpose of a presentence investigation is to guide the judge in deciding whether to grant probation, such an investigation is obviously superfluous in a death case.

 We are not moved by the defendant's complaint that the trial court limited him to evidence of mitigating circumstances which could be presented in compliance with the rules of evidence. The second stage of a murder trial is like the first stage in being a fact-finding hearing, and the rules of evidence must be followed. The defendant cites *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), but we find nothing in that case indicating that the rules of evidence should be abrogated during the second stage.

 Another argument aimed at the second stage is the defendant's contention that the jury was not given any guidance in its evaluation of the aggravating and mitigating factors. Title 21 O.S.Supp.1979, § 701.12, names seven aggravating circumstances. Section 701.10 provides that evidence of any of these may be presented to the jury, provided the defendant has been given appropriate notice. Section 701.11 provides that the death penalty cannot be imposed unless at least one of these seven circumstances is found. Circumstances named are specific, not vague, and are readily understandable. Defendant's argument here fails to make its point.

 Section 701.11 also provides that the death penalty cannot be imposed if any aggravating circumstances found are outweighed by mitigating circumstances. Section 701.10 states that, "evidence may be presented as to *any* mitigating circumstance." (Emphasis added) We take this to mean that a defendant may present any relevant evidence, within the limitations of

the rules of evidence, bearing on his character, prior record or the circumstances of the offense. In the second stage instructions, the judge told the jury that they were not limited in their consideration of mitigating circumstances, but that they could consider any such circumstances they found from the evidence in the case. The jury was also instructed in accordance with Section 701.11 that the sentence would be life imprisonment if they found no aggravating circumstances or if mitigating circumstances outweighed the aggravating circumstances they found. We hold that these instructions gave the jury sufficient guidance to prevent an arbitrary or discriminatory application of the death penalty.

Finally, under this assignment of error, the defendant attacks the specific aggravating circumstances used in his case. The seventh circumstance in Section 701.12 is, "The existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." This circumstance was alleged in the initial bill of particulars but was later dropped. The jury was not instructed on it and, contrary to the defendant's assertion, the District Attorney did not argue it. We do not understand why the defendant complains about it.

■■■■ The fourth circumstance named in Section 701.12 is that, "The murder was especially heinous, atrocious, or cruel." The defendant maintains that no adequate definitions exist for these three words and that any murder would satisfy that circumstance. Instruction No. 8 defined "heinous" to mean "extremely wicked or shockingly evil;" "atrocious" was said to mean "outrageously wicked and vile;" and "cruel" was defined as "designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the suffering of others, pitiless." Though other definitions of these words could perhaps suffice, the definitions employed gave the jurors adequate guidance. And in regard to the defendant's assertion that all murders are especially heinous, atrocious and cruel, the manner of death in one case may certainly be distinguishable

from another in the degree of atrocity or cruelty. This entire assignment of error is without merit.

■■■■ In the fifteenth assignment of error, the defendant alleges that the trial court committed error by allowing the State to present, during the first stage of the trial, evidence relating to the aggravating circumstances. A review of the transcript indicates that the defendant is correct in his contention. See, for instance, pages 392–394 and page 709 of the trial transcript. This argument is closely related to the ninth assignment of error because much of the evidence of aggravation of which the defendant complains pertained to the murder of Ms. Brown. To a certain extent, then, the discussion of that assignment, infra, is pertinent here. As to the rest of the improperly admitted evidence, we hold that the error was harmless. Even had the evidence not been admitted, the verdict of guilt unquestionably would have been the same. Modification is not appropriate since it was proper to admit the evidence in the sentencing stage.

Sixteenth, the defendant objects to the trial court's refusal to allow him to impeach the testimony of his own witness. During his investigation of the crime, the defense attorney had a conversation with a man named Frank Cooper, and he called Mr. Cooper to testify. In his opening argument at the trial and in his brief to this Court, the defendant said he expected Mr. Cooper to testify that he had seen the defendant near Sallisaw at a time which would have made it almost impossible for the defendant to be at 91st Street and Memorial Road at 1:00 p. m. When called to the stand, however, Mr. Cooper did not so testify. The defendant then called Gary Jones, who said that he observed the conversation between Mr. Cooper and the defense attorney. The defendant wanted Mr. Jones to testify concerning that conversation, but the State's hearsay objection was sustained.

■■■■ We have examined the record and find that the trial court properly excluded the testimony of Gary Jones. Outside the presence of the jury, defense counsel at-

tempted to assert surprise at the testimony of Mr. Cooper. But, in his opening statement to the jury, counsel related what he thought Mr. Cooper would testify to and stated, "and if Mr. Cooper testifies to that, fine." However, Mr. Cooper did not testify as defense counsel hoped he would and, in an effort to impeach the testimony related by Mr. Cooper, he offered the testimony of Mr. Jones. Mr. Cooper had not offered any inconsistent testimony subject to impeachment. Instead, the defendant was attempting to place a fact into evidence by Mr. Jones, who had no knowledge about that fact, i. e., that the defendant was in the vicinity of Sallisaw at a particular time. Defense counsel's claim of surprise was without merit. In *Mackey v. State*, Okl.Cr., 526 P.2d 1161 (1974), this Court quoted *Sturgis v. State*, 2 Okl.Cr. 362, 102 P. 57, 68 (1909), stating that:

"' . . . It is not enough that the witness failed to testify favorably to the party calling him, in order that previous contradictory statements made by such witness may be introduced in evidence, but the witness must have testified to facts injurious to the party calling him before he can be so impeached. In other words, such contradictory statements are permissible alone for the purpose of impeaching the witness, and are not original substantive evidence against the adverse party. . . .' "

In this instance, Mr. Cooper's testimony was not injurious to the defendant, and no injury has been shown. Instead, the defendant was attempting to place before the jury substantive evidence about which the witness had no actual knowledge. Therefore, we hold this assignment of error to be without merit.

The eighteenth assignment of error is a cumulative-error argument. Insofar as we have found defendant's other assignments of error to be without sufficient merit to change the results of this conviction, this assignment must also be found to be without merit.

Finally, in his ninth assignment of error, the defendant raises the issue of multiple charges against him. In addition to the present case, this defendant was charged in the District Court of Tulsa County, in Case No. CRF–77–755, with the murder of Kathy Brown, and in Case Nos. CRF–77–704 and CRF–77–705 with the kidnapping of both women. At one point in the proceedings he moved to have the two murder charges plus the two kidnapping charges consolidated for a single trial, but the motion was denied. The defendant then entered a motion in limine, asking that the State be prohibited from referring to the murder of Kathy Brown during the trial for the murder of Kendal Ashmore. This motion was also denied; however, the prosecutor repeatedly stated his intention to delete all references to Ms. Brown from the State's presentation. Had the defendant's motion to consolidate the charges been sustained, as it should have been, the motion in limine would have been unnecessary.

But the State did not live up to its promises. In his opening statement, the prosecutor told the jury that Mrs. Ashmore had an assistant who was also never seen again alive. Mr. Ashmore testified that Ms. Brown was with his wife and that he never saw either of them alive after the morning of the day that they were kidnapped. The jury listened to the tape recordings of the extortion calls, in which the caller threatened to do to Mrs. Ashmore what he had done to "that honky that works for you." The sheriff who testified to the uncovering of the graves told of the discovery of both bodies. During the sheriff's testimony, pictures of Ms. Brown's body were introduced. In overruling one of the defendant's objections, the trial court noted that the body in one of the photographs was not identifiable; but the clothing on that body does not at all match the clothing described and introduced as the clothing of Mrs. Ashmore.

The defendant's ninth assignment of error arises from the fact that his motion for consolidation was denied. He contends that if the State wishes to treat the two murders as independent events, then all references to Ms. Brown must be considered improper evidence of other crimes. The State insists

that it would have been impossible to properly tell the story of the killing of Mrs. Ashmore without making at least incidental references to Ms. Brown and to the kidnappings of both women. But this argument raises another question: If the State could not separate the four crimes, why did it refuse to try them together? In *Dodson v. State*, Okl.Cr., 562 P.2d 916 (1977), we encouraged prosecutors to make proper use of the joinder provisions in the State statutes —22 O.S.1971, §§ 436 et seq. There are reasons, in addition to economic ones, why it would have been better to try these four cases together. Besides saving a great deal of expense for both the State and the defendant and reducing the District Court's case load by three major cases, a single trial would have been less of a burden on the witnesses, especially Mr. Ashmore, who had to relive the entire traumatic episode as well as identify his wife's clothing. The jury was told that it was trying the defendant for one murder, but then it was given evidence that there were in fact two murders and two kidnappings.

■ With its arguments, the State has placed itself in a dilemma. For the purpose of bringing the defendant to trial, it claims that the two murders were separate and distinct crimes; but for the purpose of introducing evidence in this trial, it claims that the two murders were inseparable parts of a single criminal episode. This case is an excellent example of the sort of situation to which *Dodson* was addressed. It would have been better for all concerned parties had the two kidnap charges and the two murder charges been filed in one information, listing four separate counts. All relevant evidence could have been presented and this question of error would never have arisen.

■ In addition to bringing the instant appeal, the defendant has petitioned this Court, in Case No. P–78–62, for a writ of prohibition to bar the State from further prosecution of the defendant in Tulsa County District Court Case CRF–77–755 for the murder of Ms. Brown. In accordance with the preceding discussion, we hold that the trial court erred in denying the defendant's motion to consolidate and that the prosecution should have consented to the consolidation. See *Dodson v. State*, supra. We further hold that the State is estopped from prosecuting the remaining murder charge and the two kidnapping charges pending against the defendant.

In addition to ruling on the assignments of error that are raised on appeal, this Court is required to make three determinations, 21 O.S.Supp.1979, § 701.13. We have examined the record in this case and have given careful consideration to the arguments of counsel, both written in the briefs and presented at oral argument, and we hold:

1. That the sentence of death was not imposed "under the influence of passion, prejudice, or any other arbitrary factor." This was a notorious killing of two women, after they had been kidnapped and after a demand for $500,000.00 ransom had been made. The bodies of both women were buried in a shallow grave, where they were found. The trial court gave full consideration to public feeling at the time and the record is devoid of the kind of remarks that reveal bias, and we are certain that the trial judge in this case gave the appellant a fair and impartial trial.

2. That the evidence does support the jury's finding of statutory aggravating circumstances as enumerated in Section 701.12. The basis for this holding should be clear from the body of this opinion.[1]

3. That the sentence of death is not excessive nor disproportionate to the penalty imposed in similar cases, considering

---

1. The aggravating circumstances were: (1) The defendant created a great risk of death to more than one person in that he did in fact kill without authority of law, two persons, Kendal Inez Ashmore and Kathy Ann Brown; (2) the defendant committed the murder for remuneration or the promise of remuneration in that he killed both Kathy Ann Brown and Kendal Inez Ashmore while attempting to extort $500,000 from the Ashmore family; (3) the murder was especially heinous, atrocious and cruel; (4) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution.

the nature of the crime and the resulting consequences.

■ We have made a comparison of this case with other first degree murder cases before this Court and we find that the death penalty is not excessive.[2] We are of the opinion that this case is one of the most heinous and cruel cases considered by this Court. The manner in which the women were killed, coupled with the demand for ransom and the manner in which the bodies were disposed of, justifies the imposition of the death sentence. We find no reason to disturb or modify the sentence imposed in this Tulsa County Case No. CRF-77-756.

We have held that the State is estopped from trying the defendant for the murder of Ms. Brown in CRF-77-755, and on the two kidnapping charges pending in CRF-77-704 and CRF-77-705. However, if for any reason this case must be remanded for a new trial for the murder of Mrs. Ashmore, the State will no longer be estopped from prosecuting, nor the judge from consolidating, all four cases, under the provisions of 22 O.S.1971, §§ 436-440. In that instance, whether or not the charges shall be consolidated will lie entirely within the discretion of the trial court, under the provisions of 22 O.S.1971, § 438. *Dodson v. State*, supra. Apparently, the trial judge in the instant case was not certain of his authority to consolidate the information over the objection of the District Attorney, thus abusing the discretion conferred upon him by the statute.[3]

The judgment and sentence of death is *AFFIRMED*.

CORNISH, P. J., and BUSSEY, J., concur.

2. *Manuel v. State*, Okl.Cr., 560 P.2d 1008 (1977); *Clark v. State*, Okl.Cr., 558 P.2d 674 (1977); *Strange v. State*, Okl.Cr., 462 P.2d 292 (1969); *Fesmire v. State*, Okl.Cr., 456 P.2d 573 (1969); *French v. State*, Okl.Cr., 416 P.2d 171 (1966); *Dare v. State*, Okl.Cr., 378 P.2d 339 (1963); *Doggett v. State*, Okl.Cr., 371 P.2d 523 (1962); *Young v. State*, Okl.Cr., 357 P.2d 562 (1960); *Spence v. State*, Okl.Cr., 353 P.2d 1114 (1960); *Williams v. State*, Okl.Cr., 321 P.2d 990 (1958), 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516, *rehearing denied* 359 U.S. 956, 79 S.Ct. 737, 3 L.Ed.2d 763.

3. Title 22 O.S.1971, § 438:
"*The court may order two or more indictments or informations or both to be tried together if the offenses and the defendants, if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution was under such single indictment or information.* Laws 1968, c. 311, § 3." (Emphasis added)