**William Wayne THOMPSON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–29.**

Court of Criminal Appeals of Oklahoma.

Aug. 29, 1986.

Rehearing Denied Sept. 24, 1986.

E. Alvin Schay, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Having been certified to stand trial as an adult, William Wayne Thompson was tried for First Degree Murder [21 O.S.1981, § 701.7(A)] in Grady County District Court, Case No. CRF–83–45. The jury found him guilty as charged and fixed his punishment at death. Judgment and sentence were rendered accordingly and appellant appeals. We affirm.

The evidence at trial showed that appellant, his brother Anthony James Mann, Bobby Glass, and Richard Jones murdered Charles Keene, the appellant's former brother-in-law, in the early morning hours of January 23, 1983. Keene was shot once in the head and once in the chest, and his throat, chest, and abdomen had been cut. He also had multiple bruises and abrasions, especially about his face and head, and his left leg was broken. Keene's body was chained to a concrete block and thrown into the Washita River, where it remained undiscovered until February 18, 1983. The four co-defendants were tried separately. Each received the death penalty.

■ Appellant raises three assignments of error that pertain to the guilt stage of the trial. He first argues that the prosecutor "set the stage for a long line of requests for sympathy for the victim during voir dire." As trial counsel failed to object to any of these statements or questions, the alleged error has not been properly preserved for review. See Nuckols v. State, 690 P.2d 463 (Okl.Cr.1984). We conclude from our examination of the record that there was no fundamental error.

■ Appellant relies on Grigsby v. Mabry, 569 F.Supp. 1273 (E.D.Ark.1983) for the proposition that excluding potential jurors simply because they are opposed to capital punishment denies the accused of a trial by a fair and impartial cross-section of the community. Since this appeal was filed, the Grigsby case has been affirmed by the circuit court, 758 F.2d 226 (8th Cir. 1985), but reversed by the Supreme Court sub nom. Lockhart v. McCree, —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). The United States Supreme Court rejected this proposition as did this Court in Foster v. State, 714 P.2d 1031 (Okl.Cr.1986). Moreover, this argument was not raised at trial and cannot, therefore, be raised on appeal. See Nuckols, 690 P.2d at 469.

■ Appellant's final assignment of error that would affect the conviction is that the trial court committed reversible error by admitting into evidence a video tape depicting the recovery of the victim's body from the river and three color photographs of the victim. Trial counsel objected to the exhibits on the basis that all were gruesome and more prejudicial than useful, that they only emphasized and re-emphasized matters that were covered less graphically by the medical examiner. The trial court found that the probative value of the photographs and video tape outweighed their prejudicial effect and that they were relevant to show the condition and location of the body at the time it was recovered.

We have viewed the video tape and did not find it to be gruesome. No close-up views of the body were shown to the jury. Admitting the tape into evidence was not error. Nor was it error to admit the photograph of the victim showing the chain wrapped around his legs and a concrete block as that picture was not particularly gruesome.

■ The other two color photographs, however, were gruesome. Admitting them into evidence served no purpose other than to inflame the jury. We do not understand why an experienced prosecutor would risk reversal of the whole case by introducing such ghastly, color photographs with so little probative value. We fail to see how

they could possibly assist the jury in the determination of defendant's guilt. The trial court's admission of these two photographs was error. *See Oxendine v. State,* 335 P.2d 940 (Okl.Cr.1958).

Nevertheless, the evidence against the appellant was so strong that the error does not require reversal. *See Newbury v. State,* 695 P.2d 531 (Okl.Cr.1985). Two witnesses—Donetta Bradford, appellant's girlfriend, and Charlesetta Garcia, Bobby Glass' girlfriend—testified that appellant told them that he had shot Charles in the head and cut his throat. Charlotte Mann, Anthony Mann's former wife, heard appellant tell his mother that Charles Keene was dead, that he had killed him, and that Vicki—the victim's ex-wife and the appellant's sister—did not have to worry about him anymore.

When appellant and the other co-defendants left their house on the evening of the murder, appellant told Bradford, "We're going to kill Charles." When they returned several hours later, appellant was wet from the chest down, his nose was bleeding, and he no longer had on the cap he had been wearing when he left.

Myrtle and Malcolm "Possum" Brown, who lived near the Washita River, returned from a vacation and retired early the night Charles Keene was killed. They were awakened by a gunshot and barking dogs. A man pounded on the door and shouted, "Possum, let me in. They're going to kill me." The Browns looked outside and saw three or four men beating another man. They heard one of the men say, "This is for the way you treated our sister." Mr. Brown telephoned the sheriff, but the men left soon after they realized the Browns were home and witnessing the fray. It was too dark for the Browns to identify any of the men.

The O.S.B.I. analyzed a stain on the Browns' front porch carpet and discovered it was caused by human blood group A, the same blood type of the victim. An expended .45 caliber Winchester Western cartridge case was found in the Browns' front yard; the same type of ammunition was used to kill Charles Keene. In the Browns' dogpen, fabric was found that had the same type design as the cap appellant had worn the night of the homicide.

The above recitation of facts is by no means exhaustive, but is demonstrative of how strong the evidence against appellant was. In view of this evidence, we cannot say that the two color photographs, although gruesome, affected the jury's determination that appellant was guilty as charged.

Finding no errors which would affect the conviction of first degree murder, we affirm that judgment. We turn now to a review of the sentencing.

Appellant alleges four categories of prosecutorial misconduct: comments requesting sympathy for the victim, comments arousing societal alarm, injecting matters not in evidence through improper cross-examination, and unfair characterization of the appellant. None of the statements falling in the first category were preserved for review as trial counsel made no objection. Having reviewed the record for fundamental error, we conclude that none of the comments warrant reversal or modification. *See Nuckols,* 690 P.2d at 471.

■ The comments that appellant claims were designed to arouse societal alarm were in fact, as the trial judge ruled them to be, comments on the appellant's propensity to commit acts of violence in the future. As that was one of the aggravating circumstances alleged and supported by evidence, we find the comments to be a fair comment on the evidence and within the permissible range of closing argument.

The alleged improper cross-examination was of character witnesses called by the defense. Most of the questions were proper under 12 O.S.1981, § 2405, which states that "[i]nquiry is allowable on cross-examination into relevant specific instances of conduct."

■ One question, however, was clearly improper. The prosecutor asked one defense witness whether he was related to

Cecil Leroy Cloud. When the witness responded that Mr. Cloud was his father's step-brother, the prosecutor said, "That's the same Cecil Leroy Cloud that we sent to the pen for shooting with intent to kill, correct." We agree with appellate counsel that "[i]njection of the criminal record of a distant relative of a witness has no place in a criminal proceeding, and could not be termed anything other than an intentional effort at hurting the case of the accused." Notwithstanding, no objection was made at trial and we believe that such an obviously "cheap shot" discredited the prosecutor more than the witness. The error was not prejudicial and does not warrant modification of the sentence.

■ Appellant further complains that the prosecutor consistently sought to characterize him as being emotionally older than his chronological age. Defense counsel stressed appellant's youth as a mitigating factor, arguing that he should not be given the death penalty because he was young enough to change and improve himself. Defense counsel also tried to argue that appellant was a "normal little boy ... just like other little boys." The prosecutor's arguments to the contrary were proper inferences from the evidence. The evidence did not show William Wayne Thompson to be a typical sixteen-year-old, and the State properly argued that fact.

■ The appellant's next proposition is that the execution of William Wayne Thompson, who was fifteen at the time of the offense, would constitute cruel and/or unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution and under Article Two, Section Nine of the Oklahoma Constitution. The same arguments now made by appellant were made by appellate counsel in *Eddings v. State*, 616 P.2d 1159 (Okl.Cr. 1980). This Court, unanimously rejecting the arguments, found that imposition of the death penalty on a minor certified to stand trial as an adult constitutes neither cruel nor unusual punishment. *Id.* at 1166–67.

The United States Supreme Court granted certiorari on the issue, *Eddings v. Oklahoma*, 450 U.S. 1040, 101 S.Ct. 1756, 68 L.Ed.2d 237 (1981), but then decided the case on another ground. *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Upon reconsideration of the issue, we reaffirm our previous holding that once a minor is certified to stand trial as an adult, he may also, without violating the Constitution, be punished as an adult.

■ Next appellant argues that failure of the prosecutor to present evidence of specific aggravating circumstances at the preliminary hearing deprived the trial court of jurisdiction to sentence him to death. This Court has repeatedly rejected this argument. *See, e.g., Nuckols*, 690 P.2d at 469–70; *Brewer v. State*, 650 P.2d 54 (Okl. Cr.1983). As a subproposition of error the appellant claims that the State failed to inform him of the evidence in aggravation it intended to present. The record, however, indicates that notice was given three months before trial. This assignment of error is totally without merit.

In the next assignment of error, appellant urges this Court to overrule the portion of *Chaney v. State*, 612 P.2d 269 (Okl. Cr.1980), *rev'd in part on other grounds sub nom. Chaney v. Brown*, 730 P.2d 1334 (10th Cir.1984), that held that the instructions given provided the jury sufficient guidance to prevent an arbitrary or discriminatory application of the death penalty. *See id.* at 279–80. Substantially the same instructions were given in the case at bar, and we find them to be adequate for constitutional purposes. Furthermore, the instructions were not objected to at trial.

■ Appellant argues next that examination of one of its witnesses—the seven-year-old son of the victim—was improperly restricted by the court. The record does not bear out this allegation. The transcript of the proceedings conducted in chambers shows exactly what questions defense counsel wanted to ask. The trial court did instruct trial counsel not to ask other types of questions, but defense counsel neither

indicated that he wished to do so nor objected to the limitation.

■ That the trial court erred in failing to instruct the jury, sua sponte, that he would impose a life sentence if they could not reach a verdict within a reasonable time is appellant's next contention. This Court has held that it is not even error to refuse to give such an instruction if it is requested. *Brogie v. State*, 695 P.2d 538 (Okl.Cr.1985). The trial court did not err.

■ The appellant argues that the Eighth and Fourteenth Amendments to the United States Constitution do not permit the imposition of the death penalty because this Court has been evaluating the heinous-atrocious-cruel aggravating circumstance in an arbitrary manner. The death penalty convictions affirmed by this Court in which this aggravating circumstance has been found to exist have consistently passed constitutional challenge. *See Cooks v. State*, 699 P.2d 653 (Okl.Cr.), *cert. denied*, —— U.S. ——, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985); *Cartwright v. State*, 695 P.2d 548 (Okl.Cr.), *cert. denied*, ——U.S. ——, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985); *Stout v. State*, 693 P.2d 617 (Okl.Cr.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985); *Nuckols v. State*, 690 P.2d 463 (Okl.Cr.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); *Robison v. State*, 677 P.2d 1080 (Okl.Cr.), *cert. denied*, 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); *Davis v. State*, 665 P.2d 1186 (Okl.Cr.), *cert. denied*, 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983); *Jones v. State*, 648 P.2d 1251 (Okl. Cr.1982), *cert. denied*, 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983). Furthermore, the manner in which the murder was accomplished in this case was obviously heinous, atrocious or cruel. Before dying, the victim was severely beaten, had his leg broken, his throat and chest slashed, and knew for some time that his attackers ultimately were going to kill him.

■ Dr. Helen Kline, a clinical psychologist and director of the psychology department at Central State Hospital testified at the sentencing stage of the trial. Her testimony was used solely to prove the existence of a probability that the appellant would commit criminal acts of violence that would constitute a continuing threat to society.

Appellant argues that his Fifth and Sixth Amendment rights were violated because he was not warned of his right to remain silent during the two interviews with Dr. Kline, or that anything he said could be used against him. The original record was silent in this regard until appellant filed an affidavit dated November 21, 1985, stating he was not so warned. The State filed an affidavit dated April 1, 1986, saying she did warn him.

The United States Supreme Court has held that a criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding. When a defendant is faced while in custody with a court-ordered psychiatric inquiry, the State may use his statements at the penalty phase only if the defendant was apprised of his rights and knowingly decided to waive them. *Estelle v. Smith*, 451 U.S. 454, 468–69, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981).

Appellant claims that his failure to object when Dr. Kline testified does not constitute waiver of this claim because the Supreme Court did not require a timely, specific trial objection in *Smith*. The Supreme Court, however, gave its reasons for rejecting the State's waiver argument,[1] and none of

1. The Supreme Court agreed with the Court of Appeals' reasons, to wit: that the State did not timely raise this argument; that objecting would have been a futile act under Texas law; and that defendant Smith's objection was essentially surprise. *Smith*, 451 U.S. at 468, n. 12, 101 S.Ct. at 1876 n. 12.

those reasons are applicable to the case at bar. Thus, we conclude that regardless of whether appellant was warned, he has forfeited this argument by failing to assert the claim at a time when the trial judge could have prevented any error.

■ Finally, appellant, relying on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), argues that because the State utilized psychiatric testimony, it was error not to afford appellant a psychiatric witness to counter the State's evidence. Appellant does not allege that funds for a psychiatric witness were requested.

Even if a psychiatric witness was required by *Ake*, the *Ake* Court's reason for its ruling was to prevent the State from having a strategic advantage over a defendant that would create a risk of error in the proceeding absent a defense witness to counter-balance the State's expert testimony. In the case at bar, any advantage the State may have had was fruitless since the jury did not find the existence of the aggravating circumstance that the State intended to prove by Dr. Kline's testimony. Error, if any, was harmless and not cause for modification or reversal. *See* 20 O.S.1981 § 3001.1.

Having addressed all the errors alleged by the appellant, this Court now turns to a determination of whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor and whether the evidence supports the jury's finding that the murder was especially heinous, atrocious, or cruel. 21 O.S.Supp.1985, § 701.13.

■ The victim herein was abducted from his home, severely beaten by four men, shot twice, and had his leg broken and his throat and chest slashed with a knife. When he attempted to escape and had a chance to call out for help, he was thrown into the trunk of a car. These facts amply support the conclusion that the murder was heinous, atrocious, or cruel.

■ The record discloses nothing to indicate that the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. Although appellant was the youngest of the four assailants, his participation was hardly minimal. The evidence showed that he personally kicked the victim in the head, shot the victim in the head, slit the victim's throat, and dragged the victim's weighted body into the river. The jury's decision clearly was based on the overwhelming evidence of appellant's culpability for this truly heinous crime.

The judgment and sentence are hereby AFFIRMED.

PARKS, P.J., and BUSSEY, J., specially concur.

PARKS, Presiding Judge, specially concurring:

I agree with all that my brother Judge Brett has stated in this opinion. However, I write separately to consider whether the sentence of death in this case "is excessive or disproportionate ..., considering both the crime and defendant." This consideration is missing from the Court's opinion. 21 O.S.1981, § 701.13(C). Although our Legislature has revised this statute somewhat in 1985 Okla.Sess.Laws, Ch. 265, now codified at 21 O.S.Supp.1985, § 701.13, I believe application of this revision to cases pending on appeal at the time the law was enacted would render the new provision an *ex post facto* law. *See Green v. State*, 713 P.2d 1032, 1041 n. 4 (Okl.Cr.1985). Nevertheless, I have personally compared the

sentence imposed herein with those previous cases either affirmed [1] or modified [2] by this Court, and find the sentence to be proper.

BUSSEY, Judge, specially concurring.

Finding no error warranting reversal or modification, I agree that the judgment and sentence should be affirmed.

[1]  *Ross v. State*, 717 P.2d 117 (Okl.Cr.1986); *Foster v. State*, 714 P.2d 1031 (Okl.Cr.1986); *Green v. State*, 713 P.2d 1032 (Okl.Cr.1986); *Liles v. State*, 702 P.2d 1025 (Okl.Cr.1985); *Cooks v. State*, 699 P.2d 653 (Okl.Cr.1985); *Banks v. State*, 201 P.2d 418 (Okl.Cr.1985); *Cartwright v. State*, 695 P.2d 548 (Okl.Cr.1985); *Brogie v. State*, 695 P.2d 538 (Okl.Cr.1985); *Bowen v. State*, 715 P.2d 1093, 55 O.B.J. 2520 (Okl.Cr.1984); *Stout v. State*, 693 P.2d 617 (Okl.Cr.1984); and *Nuckols v. State*, 690 P.2d 463 (Okl.Cr.1984); *Robison v. State*, 677 P.2d 1080 (Okl.Cr.1984); *Dutton v. State*, 674 P.2d 1134 (Okl.Cr.1984); *Stafford v. State*, 669 P.2d 285 (Okl.Cr.1983); *Coleman v. State*, 668 P.2d 1126 (Okl.Cr.1983); *Stafford v. State*, 665 P.2d 1205 (Okl.Cr.1983): *Davis v. State*, 665 P.2d 1186 (Okl.Cr.1983); *Ake v. State*, 663 P.2d 1 (Okl.Cr.1983); *Parks v. State*, 651 P.2d 686 (Okl. Cr.1982): *Jones v. State*, 648 P.2d 1251 (Okl.Cr. 1982); *Hays v. State*, 617 P.2d 223 (Okl.Cr.1980); and *Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980), *modified* on other grounds, *sub. nom.*, *Chaney v. Brown*, 730 F.2d 1334 (10th Cir.1984).

[2]  *Green v. State*, 713 P.2d 1032 (Okl.Cr.1985); *Eddings v. State*, 616 P.2d 1159 (Okl.Cr.1980); as *modified*, 688 P.2d 342 (Okl.Cr.1984); *Morgan v. State*, No. F–79–487 (Okl.Cr. Nov. 14, 1983) (Unpublished); *Johnson v. State*, 665 P.2d 815 (Okl.Cr.1982); *Glidewell v. State*, 663 P.2d 738 (Okl.Cr.1983); *Jones v. State*, 660 P.2d 634 (Okl.Cr.1983); *Driskell v. State*, 659 P.2d 343 (Okl.Cr.1983); *Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983); *Munn v. State*, 658 P.2d 482 (Okl. Cr.1983); *Odum v. State*, 651 P.2d 703 (Okl.Cr. 1982); *Burrows v. State*, 640 P.2d 533 (Okl.Cr. 1982); *Franks v. State*, 636 P.2d 361 (Okl.Cr. 1981); *Irvin v. State*, 617 P.2d 588 (Okl.Cr.1980).