Richard Neal JONES, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–63.

Court of Criminal Appeals of Oklahoma.

May 22, 1987.

Rehearing Denied July 14, 1987.

Floyd W. Taylor, George Miskovsky, Sr., Miskovsky, Sullivan & Taylor, Oklahoma City, for appellant.

Tony R. Burns, Dist. Atty., Larry E. Baresel, Asst. Dist. Atty., Chickasha, for appellee.

## OPINION

PARKS, Judge:

Richard Neal Jones, the appellant, was tried by jury for First Degree Murder under 21 O.S.1981, § 701.7(A), in Grady County District Court, Case No. CRF–83–45, before the Honorable James R. Winchester, District Judge. The jury returned a verdict of guilty and set punishment at death, finding the following three aggravating circumstances: (1) that the defendant was previously convicted of a felony involving the use or threat of violence to the person; (2) that the murder was especially heinous, atrocious or cruel; and (3) that a probability existed that the defendant would constitute a continuing threat to society. *See* 21 O.S.1981, § 701.12(1), (4) & (7). We reverse.

This case arose from the murder of Charles Keene, who was killed during the early morning hours of January 23, 1983, near Chickasha, Oklahoma. Charged in the killing were Anthony Mann, Wayne Thompson, Bobby Glass, and the appellant. Each defendant was tried separately, convicted of first degree murder, and sentenced to death. We affirmed the death sentence imposed against Thompson. *See Thompson v. State*, 724 P.2d 780 (Okl.Cr. 1986). Mann's appeal is currently pending before this Court. Glass, however, died in prison. The State maintained that Keene was killed as a result of alleged threats he made to his ex-wife, Vickie Lynn Keene, who was Mann's sister and Thompson's step-sister.

The State's chief witness against the appellant was Glass, who testified that sometime after midnight on January 23, 1983, he and the other three codefendants abducted Keene from his home. They took Keene to a location near Fourth Street in Chickasha, where Mann intended to "whip Charles Keene's ass." Glass said that earlier Mann had given him a pistol, informing Glass to keep it away from Thompson, so Thompson would not kill Keene. Keene ran from the car when it stopped, but was overtaken by Glass and Thompson. Although Keene managed to get the pistol and fire one shot, Glass was successful in getting the gun back. Keene ran to the home of Malcom Smith, banged on the door, and yelled for help. Smith testified at trial that he saw four individuals striking Keene. At preliminary hearing, however, Smith testified that he only saw three people beating Keene. The men then loaded Keene into the trunk of the car, drove under a bridge near the Washita River, and removed Keene from the trunk. Glass testified that when he tripped and fell, the gun dropped out of his pocket, and Thompson picked it up and shot Keene. Glass said that Mann and the appellant removed knives from their pockets and leaned over Keene. Glass saw Mann cut Keene with his knife. Mann and the appellant then attached a chain and concrete block to Keene's body, and dragged him into the Washita River. The men then returned to town.

Keene's body was discovered nearly a month later. An autopsy revealed that Keene died as the result of gunshot wounds to the head and chest. His throat and chest had also been cut. A forensic chemist testified that blood matching Keene's blood type was found in the car used by the men that evening. In addition, a shell casing was found at the Smith residence.

As part of his defense, the appellant presented the testimony of codefendant Thompson, who had been convicted for the crime. Thompson said that the appellant had been drinking heavily on the evening of the killing, both at Mann's home and later at the Stork Club, prior to arriving at Keene's trailer. Although Thompson ad-

mitted his own participation in the killing, he testified that the appellant was passed out in the car during the abduction, beating and killing of Keene. According to Thompson, the appellant had no idea that Keene would be killed. A witness from the Stork Club testified that the appellant had passed out at the Club, and had to be helped to the car. Also, an inmate at the Grady County jail testified that Glass told him that the appellant had nothing to do with the killing, but that Glass nevertheless would see that each defendant received the death penalty.

## I.

■ In his first assignment of error, the appellant argues that the trial court erred in permitting the admission of hearsay statements made by the appellant's codefendants. We agree.[1] The statements by the codefendants were made to various relatives and friends in the hours following the murder, and related the events surrounding Keene's death, including how he was killed, how appellant and another man disposed of the body, Keene's last words, and why Vickie Lynn Keene would no longer have to fear Keene as "they" had taken care of him. The statements incriminated all of the men, including the appellant. At trial, the State sought admission of the statements, through the testimony of the codefendant's friends and relatives, under 12 O.S.1981, § 2801(4)(b)(5), and the evidence was admitted on that basis.

We hold that the statements were not properly admissible under Section 2801(4)(b)(5) of the Oklahoma Evidence Code, which is commonly referred to as the coconspirator exception to the hearsay rule. We recognize that a coconspirator's statement is more properly classified as nonhearsay under the Code, rather than as an exception to the hearsay rule. *See* 1 L. Whinery, *Guide to the Oklahoma Evidence Code* 33 (Supp.1986). Section 2801(4)(b)(5) provides that:

[a] statement is not hearsay if ... the statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

It is an essential foundational requirement that the statement be made "during the course" of the conspiracy. As Professor Whinery points out, this means that the statement must have been made while the plan was in existence and before it is executed or otherwise terminated. *See* 1 L. Whinery, *Guide to the Oklahoma Evidence Code* 265 (1985). In the context of a murder case, accomplished by two or more codefendants, this Court held that statements relating to a conversation between two alleged coconspirators two days after the murder were not admissible under Section 2801(4)(b)(5), since such statements were not made "during the course" of the alleged conspiracy which was terminated by the murder. *Kelly v. State*, 692 P.2d 563, 565 (Okl.Cr.1984). *Kelly* is consistent with our pre-Code application of the coconspirator exception to the hearsay rule. *See Crabb v. State*, 86 Okl.Cr. 323, 192 P.2d 1018, 1019 (1948) (if declarations of a coconspirator are made during a period subsequent to the crime and are merely narratives of past occurrences, they must be rejected as hearsay). *See also Patton v. State*, 29 Okl.Cr. 69, 232 P. 454, 455 (1925).

We note that the trial judge did not have the benefit of our recent decision in *Laske v. State*, 694 P.2d 536, 538–39 (Okl.Cr. 1985), in which we adopted specific procedural guidelines to assist trial judges in determining the admissibility of coconspirator's statements. In the instant case, the statements were made after the completion of the murder, and were thus not made "during the course" of the conspiracy as required by Section 2801(4)(b)(5) of the Oklahoma Evidence Code. On the basis of the foregoing, the statements constituted inadmissible hearsay under 12 O.S.1981, § 2802, and denied appellant his rights of confrontation and cross-examination on a critical issue.

## II.

We also find merit, in part, to the appellant's claim of error with regard to the

---

1. Our holding does not condemn the single party admission made by the appellant in the hours following the killing. *See* 12 O.S.1981, § 2804(B)(1).

admission of three color photographs of the victim, and a portion of a video tape depicting recovery of the body from the Washita River. We agree that two of the color photographs should not have been admitted. *Accord Thompson v. State*, 724 P.2d 780, 782–83 (Okl.Cr.1986). The State has maintained, both in its brief and at oral argument, that these photographs were not actually viewed by the jury until the second stage of trial. This argument, however, is not supported by the record. The transcript reveals that the photographs were admitted by the trial judge during the guilt-innocence stage. Moreover, during his closing argument in the second stage, the prosecutor referred to the fact that the jury had previously viewed the photos in the jury room. The State's contention, therefore, is unfounded.

■ We turn now to the merits of this issue. Relevant evidence is evidence having any tendency to make the existence of a fact more probable or less probable than it would be without the evidence. 12 O.S. 1981, § 2401. However, even relevant evidence may be excluded under 12 O.S.1981, § 2403, if:

> its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.

A trial court abuses its discretion when it admits gruesome photographs, and the probative value of such photographs is substantially outweighed by potential prejudice to the accused. *See Nuckols v. State*, 690 P.2d 463, 470 (Okl.Cr.1984).

■ State's Exhibits Nos. 10 and 11 depict, respectively, a close-up view of the decedent's chest, neck and a portion of his face, and the back of his head. The State sought admission of these photographs to establish venue, the death of Keene, and the location of the wounds on the body. However, these facts were established through other competent evidence, and were not disputed by the appellant. Our examination of these two color photographs leads us to conclude that their mini-mal probative force, in light of their cumulative nature, was substantially outweighed by the danger of unfair prejudice. 12 O.S. 1981, § 2403. *See Tobler v. State*, 688 P.2d 350, 355–56 (Okl.Cr.1984). The two photographs depicted the body of Keene, which had been submerged for nearly a month, and was obviously in a state of decomposition. In State's Exhibit No. 10, the body is shown covered with algae and slime, a factor which added to its gruesomeness, and lessened its probative value as the algae partially covered the wounds. State's Exhibit No. 11, which also revealed Keene's algae covered body, depicted the body in an advanced state of decomposition as evidenced by the condition of the skin and hair, portions of which were missing. These two photographs added virtually nothing to the State's submission of proof, and served no other purpose than to inflame the jury. *See Thompson v. State*, 724 P.2d 780, 782 (Okl.Cr.1986). The trial court's admission of these two photographs was error.

In addition, we are compelled to address an assertion made by the prosecutor during oral argument. The prosecutor argued that the photographs in the instant case were not "as gruesome" as those in other cases he has tried, in which admission of the photographs was affirmed by this Court. *See, e.g., Stout v. State*, 693 P.2d 617 (Okl.Cr.1984); *Cooper v. State*, 671 P.2d 1168 (Okl.Cr.1983); *Cooper v. State*, 661 P.2d 905 (Okl.Cr.1983). The State's argument misses the mark. The test is not whether the photographs in one case are "as gruesome as" or "more gruesome than" those in another case. The test is whether the probative value of the photographs is substantially outweighed by the danger of unfair prejudice. 12 O.S.1981, § 2403. This standard is applied by the trial court, and by this Court, on a case-by-case basis. Thus, we reject the State's contention.

### III.

Finally, we agree with the appellant's next assertion that prosecutorial misconduct in this case supplies another basis for

our decision to remand this case for a new trial. Appellant raises three allegations of misconduct: (1) that the prosecutor repeatedly requested sympathy for the victim during voir dire; (2) that he introduced irrelevant and prejudicial evidence in his examination of the victim's wife; and (3) that he engaged in improper and prejudicial closing argument.

## A.

■ At the outset of this trial, the prosecutor began asking the jury to have sympathy for the victim. This Court has previously condemned such tactics by the same prosecutor. *See Tobler v. State,* 688 P.2d 350, 353–56 (Okl.Cr.1984). *See also Scott v. State,* 649 P.2d 560, 563–64 (Okl.Cr. 1983). Beginning early in voir dire, District Attorney Tony R. Burns asked one prospective juror:

... You've heard of Vickie Keene (decedent's ex-wife). But Charles Keene is the man that was murdered. So, the rights of the defendant are important to each citizen in our country, like they are to Mr. Jones ... But do you believe that the rights that a victim has—that they have rights to (sic)?

After a defense objection was overruled, the prosecutor continued:

So in this case, you know, it's important that the rights of Mr. Jones be protected. But I'm asking that you that each time you hear the—and think about the rights of Mr. Jones, will you also think about the rights of Mr. Keene, the man who's been murdered.

The prosecutor also inquired of another prospective juror in the following manner:

Do you believe those laws are intended for the—to protect the rights of the victim as well as they're intended for the rights of Mr. Jones?
JUROR BEAL: Yes, sir.
Mr. Burns: It's a two-sided coin is it not?
JUROR BEAL: Yes, sir.

And again:

As Mr. Beal answered the question a few moments ago, do you feel like the laws are intended for Mr. Jones but they're also intended for the victims of the crime?

In finding the foregoing comments to be error, we note that in *Tobler* and the cases cited therein, this Court has repeatedly held that it is improper for a prosecutor to ask jurors to have sympathy for crime victims. *Tobler,* 688 P.2d at 354. Such conduct is reprehensible, and clearly violative of *The ABA Standards for Criminal Justice, The Prosecution Function,* § 3–5.8(c) (1980), which have been adopted by this Court. *Id.* Under those standards, a prosecutor is strictly prohibited from using arguments calculated to inflame the passions and prejudices of the jury. As pointed out in *Tobler,* the primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done. *See also Grant v. State,* 703 P.2d 943, 947 (Okl.Cr.1985) (Parks, P.J., specially concurring).

## B.

■ We also agree with the appellant that the prosecutor improperly evoked further sympathy for the victim when, on direct examination of the victim's wife, he elicited testimony that one of the codefendants told her that Keene's last words were for them to "take care of my boys." Not only was this testimony totally unrelated to any of the issues presented at trial, but it was also hearsay within hearsay. *See* 12 O.S.1981, § 2805. *See also* 1 L. Whinery, *Guide to the Oklahoma Evidence Code* 311–13 (1985). We find that such testimony "had no relevance, and was clearly designed to create sympathy from the jurors." *Tobler,* 688 P.2d at 354.

## C.

In addition, we find that the prosecutor erred when he specifically asked the jury to disregard the option of convicting the appellant of manslaughter:

... Mr. Ivy was right about one thing, he said that I'm going to tell you that if you want to vote manslaughter then to just disregard it. I'm telling you absolutely right about that, if you think this is just a manslaughter case, then you find him

not guilty and let him go home. If that's all this is is a manslaughter.

 This identical argument was found to be error in *Tobler*, because it improperly aligned the prosecutor with the victim, and constituted a clear attempt to persuade the jury away from following the judge's instructions on the law of manslaughter. *Tobler*, 688 P.2d at 356. We have consistently held that a prosecutor should not assume the role of the court and declare the law to the jury to the prejudice of the defendant. *See Frazier v. State*, 607 P.2d 709, 711 (1980). Furthermore, we believe that such a statement attempts to usurp the role of the jury, who is responsible for determining which particular crime, if any, was committed by the accused. It is clearly improper for a prosecutor to make arguments which tend to "divert the jury from its duty to decide the case on the evidence." *The ABA Standards for Criminal Justice, The Prosecution Function*, § 3–5.8(d) (1980). We want to emphasize that we do not condemn the later remarks of the prosecutor which argued why the evidence did not seem to support a verdict of manslaughter. Prosecutors are entitled to draw logical inferences and state conclusions based upon the evidence, but it is improper for them to state their personal opinion. *See Young v. State*, 695 P.2d 868, 869 (Okl.Cr.1985).

## D.

██ Finally, we feel it is necessary to address the prosecutor's comments during closing argument that the "job" of the appellant's attorneys was to "get their client Richard Jones off." Not only was this an *improper attack on the credibility of* defense counsel, *see Stout v. State*, 693 P.2d 617, 627 (Okl.Cr.1984), *cert. denied*, 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985), but it was also a gross misstatement of the role to be fulfilled by defense counsel. The proper role of a defense attorney is set forth in *The ABA Standards for Criminal Justice, The Defense Function*, § 4–1.1(a)–(f) (1980). In relevant part, these standards provide:

(b) The basic duty the lawyer for the accused owes to the administration of justice is to serve as the accused's counselor and advocate, with courage, devotion, and to the utmost of his or her learning and ability and according to law.

(c) The defense lawyer, in common with all members of the bar, is subject to standards of conduct stated in statutes, rules, decisions of courts, and codes, canons, or other standards of professional conduct. The defense lawyer has no duty to execute any directive of the accused which does not comport with law or such standards; the defense lawyer is the professional representative of the accused, not the accused's alter ego.

(d) It is unprofessional conduct for a lawyer intentionally to misrepresent matters of fact or law to the court.

The belief of a defense lawyer that his client is guilty is insufficient to excuse him from a court appointment in a criminal proceeding. *ABA Model Code of Professional Responsibility*, EC2–29 (1981). A defense attorney has an affirmative duty to represent an accused zealously within the bounds of the law. *Oklahoma Code of Professional Responsibility*, 5 O.S.1981, Ch. 1, App. 3, Canon VII. As the United States Supreme Court has recognized, lawyers in criminal cases "are necessities, not luxuries." *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). The Sixth Amendment right to counsel is intended to ensure that the accused receives a fair trial by requiring "the prosecution's case to survive the crucible of meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 656, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 657 (1984). The Court stated in *Cronic*:

[T]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no *bona fide* defense to the charge, counsel cannot create one ... At the same time, even when no theory defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond [a] reasonable doubt.

*Id.* at 656, 104 S.Ct. at 2045–46 n. 19. *See also Nix v. Whiteside,* 475 U.S. 157, ——, 106 S.Ct. 988, 996, 89 L.Ed.2d 123 (1986) ("[U]nder no circumstance may a lawyer either advocate or passively tolerate a client's giving false testimony."). Accordingly, the prosecutor's characterization of defense counsel's role was improper.

### IV.

■ In conclusion, we cannot say that the improper admission of the hearsay testimony, photographic exhibits, and improper comments made by the prosecutor, did not prejudicially influence the jury's determination of guilt. Moreover, this is not a situation where proof of the appellant's guilt was "overwhelming." Rather, the trial judge specifically found that the evidence presented did not "foreclose all doubt respecting the defendant's guilt," although he did make a notation that the evidence did foreclose a "reasonable doubt." *Original Record* 527, *Report of Trial Judge,* at 4. The appellant's actual involvement in the murder was disputed by competent evidence.

Accordingly, for the foregoing reasons, the judgment and sentence of the trial court is REVERSED and REMANDED for a new trial.

BRETT, P.J., dissents.

BUSSEY, J., concurs in results.

BRETT, Presiding Judge, dissenting.

I respectfully dissent. Finding no error that would warrant reversal or modification, I would affirm the judgment and sentence.

### I.

The alleged hearsay statements complained of in the first assignment of error are as follows:

1. Testimony by Dorothy Thompson that Wayne Thompson told her that "they had taken care of some business" and that Vickie Keene did not have to "bother with Charles no more."

2. Dorothy Thompson also testified as to what Bobby Glass had told her about chasing Charles Keene down, the fight at "Opossum" Brown's, and Charles getting the gun and trying to shoot him.

3. Testimony by Charlotte Mann relating the conversation she overheard between Wayne Thompson and Dorothy Thompson wherein Wayne admitted killing Keene and said Vickie would not have to worry about him any more.

4. Charlotte Mann also related her conversation with Tony Mann wherein Tony told her that Charles was really dead and that Wayne had killed him.

5. Charlotte Mann testified that Tony said that Charles was shot, cut up and dumped in the river with blocks on his feet, and that both Wayne Thompson and Bobby Glass shot him.

6. Bennie McCarthy related a conversation he had had with Tony Mann and Bobby Glass. Tony and Bobby said they had to go out to check the body and to get rid of the gun.

7. Bennie McCarthy also related a conversation with Bobby Glass in which Bobby said that he had shot Keene, that Thompson had cut him up, and that Tony Mann and the appellant had beaten Keene. Glass also told the witness that Jones and Mann had dragged the body to the river.

8. Bennie McCarthy testified that Tony Mann told him that the gun they were trying to sell was the one that "they" shot him with.

9. Testimony by Vickie Keene that Tony Mann told her that Charles was dead and that she did not have to worry any more. He also told her that Keene's last words were to take care of his children.

10. Vickie Keene also testified that Tony Mann told Bobby Glass to return to the river to check the body and to put the gate back up.

The defense theory in this case was that Bobby Glass, Wayne Thompson and Tony Mann beat and then murdered Charles Keene while the appellant was passed out in the car. Assuming *arguendo* that the statements complained of constitute hearsay, most of them are harmless as they do

not implicate the appellant and, in fact, support the theory of defense. Specifically the testimony outlined in numbers 3, 4, 5, 6, 10, and the first statement in 9 fall into this category.

Bobby Glass was the first witness for the State. On cross-examination defense counsel asked questions which implied that Glass decided to lie about appellant's participation so that he would also get the death penalty. The statements described in number 7 were admissible as prior consistent statements offered to rebut an express or implied charge of recent fabrication or improper influence or motive. *See* 12 O.S.1981, § 2801(4)(a)(2).

The statements contained in numbers 1, 2, and 8 refer to actions taken by "they". If by "they" the witnesses meant Bobby Glass, Wayne Thompson, and/or Tony Mann, the statements did not implicate the appellant and were therefore harmless. If, on the other hand, appellant was included, he would have been implicated and error might have resulted. However, the record was deliberately left ambiguous. When defense counsel objected to the first of these statements and wanted the question to be specific as to who "they" included, the judge responded that if he wanted to know the answer the witness would tell him. Defense counsel did not ask for clarification. The record remained, in all instances, ambiguous. Because appellant was not clearly implicated, I do not believe admission of the statements to be reversible error.

The second statement in number 9—that Keene's last words were to take care of his children—were not hearsay since they were not offered to prove the truth of the matter asserted. *See* 12 O.S.1981, § 2801(3). Furthermore, no objection was made at trial, so any error was waived. *See Brewer v. State,* 718 P.2d 354, 362 (Okl.Cr.1986).

Having examined each statement complained of, I do not find that any one statement or the statements taken as a whole warrant reversal of the appellant's conviction.

## II.

I agree with Judge Parks that admission of the two color photographs, State's Exhibits 10 and 11, was error. I do not believe that this evidence determined the verdict, however. Thus the error does not necessitate reversal. *See Thompson v. State,* 724 P.2d 780, 783 (Okl.Cr.1986).

## III.

Most of the alleged prosecutorial comments upon which Judge Parks' reversal is predicated were not objected to at trial and were therefore waived. *See VanWoundenberg v. State,* 720 P.2d 328, 334 (Okl.Cr. 1986). This is true of the comments and questions discussed under the headings B, C, and D of the majority opinion.

As for part B, when the victim's last words in reference to taking care of his children were quoted, no objection was entered. Furthermore, the testimony was not hearsay since it was not offered to prove the truth of the matter asserted. *See* 12 O.S.1981, § 2801(3).

With reference to the majority's part C, not only did defense counsel not object to the prosecutor's asking the jury to disregard the manslaughter instruction, defense counsel appears to have agreed with the prosecutor and invited the prosecutor's remarks when defense counsel stated in his own closing argument:

[The prosecutor will] also probably tell you this, if you don't find him guilty of murder, don't find him guilty of anything. Don't find him guilty of manslaughter, don't even consider that. Don't even consider a lesser included because of the gruesomeness of the crime. There's three verdicts. Guilty of murder. Guilty of Manslaughter, or not guilty. That means not guilty of anything period. That's all you have to consider. If you think this .. if you think and believe from the evidence that's been presented that they have failed to prove beyond a reasonable doubt that Ricky Jones is guilty of murder as they have alleged, then you have a duty to find him not guilty. And I'm sure that all of you have the courage to do that; you have

the duty to do that, and you have that right.

T.R. 1110.

The comment about defense counsel's "job" in part D of the opinion was neither objected to at trial, nor was it raised on appeal, except in the majority opinion.

As for part A of the majority opinion, the first question from voir dire was objected to. Although the trial court overruled the objection, he did admonish the jury that "there is no place in this trial for sentiment, sympathy or prejudice." This admonition cured any error. *See Mahorney v. State*, 664 P.2d 1042, 1046 (Okl.Cr.1983).

The next quote was also objected to, but the objection was that the form of the question was argumentative, not because it amounted to a request for sympathy. The objection was sustained. The objection made did not preserve any error relating to evoking sympathy for the victim. *Cf. Marks v. State*, 654 P.2d 652, 655 (Okl.Cr. 1982) (when a specific objection is made at trial to the admission of evidence, no different objection will be considered on appeal).

The remaining questions were not met with an objection.

### IV.

I have examined those assignments of error raised in appellant's brief that were not addressed in the majority opinion and found none that would warrant reversal or modification. For the above reasons, I would affirm the judgment and sentence. Therefore, I respectfully dissent to the majority opinion.